**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DISTRICT**

2020 OUTDOOR MEDIA, LLC,

                    Plaintiff,                Case No.

v.                                      Hon.

                                      **COMPLAINT**

CITY OF STERLING HEIGHTS, and the
CITY OF STERLING HEIGHTS ZONING
BOARD OF APPEALS,

                    Defendants.

SHAUN A. KELLEY (P83704)
BOEDEKER LAW, P.C.
*Attorney for Plaintiff*
48 Market Street, Suite 2B
Mount Clemens, MI 48043
(586) 871-7684
shaun@boedekerlaw.com

**COMPLAINT**

    2020 OUTDOOR MEDIA, LLC, by and through its undersigned attorney, files this Complaint, and alleges as follows:

**INTRODUCTION**

1.  Plaintiff 2020 Outdoor Media, LLC, ("2020 Outdoor") brings this action for damages, declaratory relief, and injunctive relief against the Defendant City of Sterling Heights and Defendant City of Sterling Heights Zoning Board of Appeals

(the "City" or "ZBA") pursuant to 42 U.S.C. § 1983, and under the U.S. Constitution, the Michigan Constitution, and Michigan statutory and common law.

2.  2020 Outdoor holds a real-property interest in the form of a perpetual easement within a heavy industrial zone located at 6699 Metropolitan Parkway in Sterling Heights.

3.  This property, situated in the M-2 Heavy Industrial District, is home to five buildings and a cellular tower, and it uniquely borders a service drive with direct exposure to Metropolitan Parkway, making it an ideal location for large-scale signage. The property's configuration and existing uses make it well-suited for the proposed billboard, which would enhance the visibility of commercial messages in a high-traffic corridor. The City has continuously taxed the property while imposing strict zoning restrictions that prevent its full utilization. In an effort to put the parcel to use and create both a positive business-advertising environment while simultaneously generating tax revenue for the City, 2020 Outdoor acquired an interest in the property intending to erect an outdoor advertising sign. Several non-use variances were required to build the sign. The City unanimously denied every single variance request submitted by 2020 Outdoor. This is despite the fact that the City has previously allowed the construction of an electronic message billboard on Metropolitan Parkway for the Michigan Lottery Amphitheater (Freedom Hill).

4.  The City violated the First and Fourteenth Amendments to the U.S. Constitution by creating an ordinance scheme which functions as an unconstitutional

prior restraint, is unconstitutionally vague, is contrary to *Reed v. Town of Gilbert*, 576 U.S. 155 (2015), and which otherwise deprives 2020 Outdoor of its civil rights under color of law.

5.   The City has violated the Fifth Amendment to the U.S. Constitution and Article X, Section 2, of the Michigan Constitution. Const. 1963, art. X § 2, as the City zoning and/or sign ordinance provisions and the Zoning Board of Appeals' ("ZBA") denials amount to a regulatory taking, leaving 2020 Outdoor without any beneficial use of its property interest whatsoever.

6.   The City has violated Art. 1, § 5, of the Michigan Constitution in that its zoning and/or sign ordinance schemes seek to unconstitutionally restrict protected free speech.

7.   The City has deprived 2020 Outdoor of substantive due process under both the U.S. Constitution and the Michigan Constitution.

**PARTIES**

8.   Plaintiff 2020 Outdoor is a Michigan limited liability company with a property interest and is seeking to construct an outdoor advertising sign within the City.

9.   Defendant City is a Michigan municipal corporation created and organized pursuant to the Home Rule City Act, M.C.L. § 117.1, *et seq*., and is situated in Macomb County, Michigan.

10. Defendant ZBA is a Michigan zoning board of appeals, which is a quasi-

judicial tribunal and a creature of statute finding its genesis in the Michigan Zoning Enabling Act, M.C.L. § 125.3101 *et seq*. ("MZEA") and is comprised of appointed individuals.

## JURISDICTION

11. This Honorable Court has jurisdiction relative to this action pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims arising under the U.S. Constitution by way of 42 U.S.C. § 1983.

12. This Honorable Court has jurisdiction relative to this action under 28 U.S.C. § 1343(a)(3) and (4) because Plaintiff asserts claims of deprivation of rights under color of law per the U.S. Constitution.

13. This Honorable Court also has jurisdiction relative to the injunctive and declaratory relief sought by Plaintiff pursuant to 28 U.S.C. §§ 2201(a) and 2202, and Fed. R. Civ. P. 57 and 65.

14. This Honorable Court has supplemental jurisdiction over Plaintiff's pendant state-law claims pursuant to 28 U.S.C. § 1367.

## DECLARATORY AND INJUNCTIVE RELIEF

15. This Honorable Court is empowered to grant declaratory relief under 28 U.S.C. § 2201 because an actual controversy exists concerning the rights, privileges and immunities to which 2020 Outdoor is entitled. This Honorable Court also has authority under 28 U.S.C. § 2202 to grant injunctive relief.

## VENUE

16.  Venue is proper in this Honorable Court under 28 U.S.C. §§ 1391(b) and (c) because the City and the ZBA are municipal entities located within Macomb County and the events complained of herein occurred within the Eastern District of Michigan.

## GENERAL ALLEGATIONS

17.  2020 Outdoor holds a real-property interest in the form of a perpetual easement on property located at 6699 Metropolitan Parkway in Sterling Heights, currently owned by American and Import Auto Parts, Inc. The property is zoned M-2 (Heavy Industrial District) and is identified by the parcel's frontage along Metropolitan Parkway and its unique industrial configuration.

18.  2020 Outdoor's sole purpose in acquiring a property interest was to construct an outdoor advertising sign, as the property's industrial zoning and location along a major roadway make it ideally suited for large-scale signage, rather than traditional industrial building development:

 

19.  The Property is situated behind the service drive overpass of Metropolitan Parkway, a six-lane divided major roadway between Van Dyke and Mound Road. The elevated rail corridor overpass, standing at 23-24 feet high, virtually blocks all visibility of the Property from the roadway.

20. A large outdoor advertising sign (i.e. a billboard) is ideal for this location because smaller signs are not economically feasible, as the location of this parcel requires a large sign for visibility. Business advertisements will remain unseen on 2020 Outdoor's sign in this location if the City restricts 2020 Outdoor to constructing only a monument sign or other small signage:



Photo depicting the proposed location of 2020 Outdoor's outdoor advertising sign. A monument sign or other small ground sign will be economically meaningless given that motorists will be unable to see such a sign from the service drive ramp on Metropolitan Parkway. A billboard is the *only* economically feasible choice.

21. In this vein, 2020 Outdoor sought to erect an off-premises billboard on the Property by submitting a permit application to the City.

22. 2020 Outdoor's off-premises sign permit application requested that the proposed billboard be constructed:

    a.  At a setback of 25 feet from the front lot line along the Metropolitan Parkway service drive;

    b.  At a height of 70 feet, where the maximum permitted height is 15 feet for freestanding signs and 25 feet for billboards;

    c.  With a total sign surface area of 1,300 square feet, consisting of two 650 square foot sign faces, where the maximum permitted area is 150 square feet per face; and

    d.  With 100% of the sign's surface area allocated to an electronic message board, whereas only 33% is allowed by ordinance.

23. However, 2020 Outdoor's sign-permit application and variance requests was denied by the City's Zoning Board of Appeals on July 23, 2024.

24. 2020 Outdoor then sought variances from the portions of Section 28.13 of the City's sign ordinance ("Sign Ordinance") which the ZBA used as predicates to deny 2020 Outdoor.

25. The City's ZBA denial was based upon the following portions of the City's sign ordinance:

    a.  Style of Sign (Section 28.13(K), Sign Table Reference (B)): The applicant requested a billboard-style off-premises sign, which would be

subject to the City's ordinances. The proposed pole sign does not meet the requirement for monument-style signs with masonry materials.

b. Height (Section 28.13(K), Sign Table Reference (B), (D)): The applicant requested a 70-foot-tall sign, exceeding the 15-foot height limit for freestanding signs and the 25-foot limit for billboards.

c. Sign Surface Area (Section 28.13(K), Sign Table Reference (B), (D)): The proposed sign has 650 square feet per face, exceeding the 150 square feet allowed.

d. Electronic Message Board (Section 28.13(K), Sign Table Reference (D)): The applicant proposed 100% of the sign face to be an electronic message board, whereas only 33% is allowed. (**Exhibit A**).

e. Operational Details (Section 28.13(H)(6)(a)): The applicant did not provide information regarding the frequency of message changes, transition effects, or brightness levels of the electronic message board.

26. The ZBA then set forth subjective and arbitrary criteria under which variances from the Sign Ordinance may be approved. The ZBA provides as follows:

> A use variance shall not be granted unless the Zoning Board of Appeals finds on the basis of substantial, competent, and material evidence presented by the applicant that there is an unnecessary hardship in the way of carrying out the strict letter of the Zoning Ordinance. In determining whether an unnecessary hardship exists, the Zoning Board of Appeals must find that:

8

a.  The property in question cannot be reasonably used or cannot yield a reasonable return on a prudent investment if the property were to be used only for a purpose allowed in the zoning district where the property is located.

b.  Compliance with the strict letter of the restrictions governing area, setbacks, frontage, height, bulk, lot coverage, density, or other dimensional or construction standards will unreasonably prevent the owner from using the property for a permitted purpose or will render conformity with such restrictions unnecessarily burdensome.

c.  The grant of a variance will do substantial justice to the applicant as well as to other property owners in the district and a lesser variance will not give substantial relief to the applicant as well as be more consistent with justice to other property owners in the zoning district.

d.  The plight is due to unique circumstances peculiar to the property and not to general neighborhood conditions.

e.  The use to be authorized by the variance will not alter the essential character of the area and locality.

f.  The problem is not self-created.

g.  The spirit of the Zoning Ordinance will be observed, public safety and welfare secured, and substantial justice done.

27.  Additionally, the ZBA stated that they must make an affirmative finding on the following subjective, arbitrary, and discretionary standards under which variances from the Sign Ordinance may be approved. The proposed use will, when approved:

a.  Promote  the  intent  and  purpose  of  the  Zoning

Ordinance;

b. Be designed, constructed, operated, maintained, and managed so as to be compatible, harmonious, and appropriate in appearance and in operation with the existing or planned character of the general vicinity, adjacent uses of land, the natural environment, the capacity of public services and facilities affected by the building structure or land use, and the community as a whole;

c. Be served adequately by essential public facilities and services, such as highways, streets, police and fire protection, drainageways, refuse disposal, or that the persons or agencies responsible for the establishment of the land use or activity shall be able to provide adequately any such service sufficiently;

d. Not be detrimental, hazardous, or disturbing to existing or future neighboring uses, persons, property, or the public welfare;

e. Not create additional requirements at public cost for public facilities and services that will be detrimental to the economic welfare of the community.

In addition, the proposed variance will not impair an adequate supply of light and air to adjacent property or unreasonably increase the congestion in public streets, or increase the danger of fire or endanger the public safety or unreasonably diminish or impair established property values within the surrounding area, or in any other respect impair the public health, safety, comfort, morals, or welfare of the city's inhabitants.

28. Variance request applications and evidence submitted during oral presentations by 2020 Outdoor to the ZBA thoroughly analyzed all the above discretionary standards and Sign Ordinance criteria in Section 28.13. (**Exhibit B**).

2020 Outdoor's arguments included citations to, and argument regarding, among other things, the City's Sign Ordinance and variance criteria.

29. This case represents an ongoing struggle for 2020 Outdoor to validate its property rights, going back to 2018. On or about October 25, 2018, a previous hearing was conducted before the City ZBA concerning 2020 Outdoor's variance requests. Despite the City's legal counsel requesting that the ZBA members analyze 2020 Outdoor's variance requests according to the criteria of the City's Sign Ordinance, the members of the ZBA instead:

    a.  Postponed Plaintiff's variance requests, while subjectively, arbitrarily, capriciously citing reasons tied more to maintaining the current zoning framework than to addressing the specific criteria that are usually applied when evaluating variance requests;

    b.  Discussed and believed subjectively, arbitrarily, capriciously, and without relying on objective evidence that 2020 Outdoor's billboard would affect the character of the neighborhood, i.e. heavy industrial district and rail corridor.

    c.  Were concerned about the precedent that might be set by granting Plaintiff's variances, as well as the potential implications for future zoning decisions in the area despite same not being the mandate of the City Ordinances or State or Federal law; and

    d. Stated that it was important to adhere strictly to the zoning ordinance, with no emphasis on the specific needs or justifications provided by Plaintiff, *even though the City's Ordinances require the ZBA to consider these criteria*.

30. Again, on or about January 24, 2019, another hearing was conducted before the City ZBA concerning 2020 Outdoor's variance requests. During that hearing, the Plaintiff:

    a. Agreed to reduce the size of the billboard by 200 square feet for an overall sign area of approximately 1,000 square feet, as well as reduce the height of the billboard by 10 additional feet;

    b. Provided the City a picture of the proposed billboard along with a picture of the Metropolitan Parkway overpass and rail corridor and explained the reason for needing the proposed height of the sign, which is to be visible from traffic going in both directions;

    c. Explained that any glare from the proposed sign can be controlled by the billboard's illumination settings while clarifying how the sign would be an important method to disseminate information for the City;

    d. Stated that the current ordinance is overly prohibitive and presents a major economic hardship, as there is nowhere else to put a sign of this nature in the City;

e.  Displayed a picture of the sign and showed the beautification efforts to use decorative materials, such as a brick trim and foundation, on the sign pole to make the billboard more visually appealing while adhering to the monumental-style architectural requirement.

f.  Referenced several studies that explained why billboards are not a hindrance but could be beneficial for the City, reiterating the opportunity for the City to use the sign at any given moment to display vital, instantaneous information regarding health, safety, and welfare to the public, as the average traffic on Metropolitan Parkway is approximately 52,200 vehicles per day;

g.  Stated that the billboard will serve all of the small businesses and people of the City, while also serving the City's governmental agencies, such as the police department, fire department, and city administration, stating that the billboard will generate tax revenue, which will benefit the City directly;

h.  Clarified that the billboard will be located on a restricted easement, which runs with the land, and argued that the Plaintiff is not seeking to set a precedent but merely asking to put the sign somewhere it should be allowed due to the location being a heavy industrial zone;

i.  Responded to the City's concern about liability issues due to the

billboard's height and dimensions by explaining that 2020 Outdoor will have a minimum of $2 million coverage for the billboard; and

j.  Informed the City that the billboard will host an electronic and rotating screen of advertisements but explained that there would be only one advertisement or notice featured at a time in an effort to minimize alleged roadway distractions.

31. In response to the above, the City disregarded the Plaintiff's findings and wrongly concluded that their denial did not present any hardship for the Plaintiff. The City stated that they did not feel "**comfortable**" going against the current ordinance. During the January 24, 2019, hearing, the City:

a.  Asked the Plaintiff to further reduce the size of the billboard to 700 square feet, to which the Plaintiff agreed.

b.  Explained that the key question before the City is whether there is a hardship in placing a billboard on the Property.

c.  Stated that the ZBA's role is to interpret the sign ordinance emphasizing that the intent of the zoning ordinance is to prohibit billboards in the City. In response, the Plaintiff argued that 2020 Outdoor is seeking a use variance to obtain relief from this prohibition.

d.  Questioned the Plaintiff about whether he has "done any studies in the area for light pollution from the sign and if it will be seen from any

residential area," to which the Plaintiff responded that the billboard will have "zero impact" on the residential area due to the billboard's significant distance from any residential area, while also stating that the billboard's illumination intensity settings can be controlled and dimmed accordingly.

e. Asked the Plaintiff if the billboard would be available to all businesses in the City and what restrictions might apply. The Plaintiff replied that the billboard would be open to all, especially local businesses, but clarified that certain restrictions would be in place, such as prohibiting advertisements for "gentleman's clubs."

f. Stated that the City is not "comfortable" with giving the Plaintiff control over the billboard's messaging and would prefer to establish criteria for what would be allowed (despite the existence of Reed v. Town of Gilbert, (CITATION)). In response, the Plaintiff explained that 2020 Outdoor would review all content to ensure no offensive messages are displayed, while also being mindful of constitutional issues like the First Amendment. The Plaintiff added that 2020 Outdoor would restrict any messaging that is offensive or lacks moral turpitude.

g. Reached arbitrary and capricious conclusions due to its hesitance to grant the Plaintiff's variances, incorrectly suggesting that the request

should be brought before the City Council instead.

32.  The ZBA also opened the hearing to public participation. Unfortunately, much of the public's input included insults and accusations against the Plaintiff, such as claims that he was trying to "sneak in the back door" to get the proposed variances approved—allegations that are blatantly false.

33. Ultimately, during the hearing on January 24, 2019, the ZBA introduced a motion to approve the Plaintiff's request for a variance to construct an electronic message billboard sign on the Property. Unfortunately, the motion failed, and the Plaintiff was arbitrarily and capriciously denied his requested variance.

34. On July 23, 2024, the ZBA conducted the most recent meeting to reconsider 2020 Outdoor's variance requests to construct a billboard on the Property. At the outset of the July 23, 2024 meeting, the 2020 Outdoor, through counsel, incorporated by reference all previous comments and bases presented by 2020 Outdoor in its prior attempts to obtain the variances, rather than reiterating arguments that had been articulated at length on previous occasions.

35.  The ZBA was reminded  of the extensive information and evidence previously submitted by 2020 Outdoor, including the detailed rationale supporting the variance requests—and the ZBA chair recognized that all ZBA members were familiar with and had knowledge of the previous variance requests save a lone ZBA member, who the ZBA chair assured had thoroughly read all the materials within the ZBA meeting

packet, which included extremely detailed argumentation from past variance-request attempts by 2020 Outdoor Media. Indeed, this information included the property's unique industrial zoning, the proposed billboard's specifications, and the various benefits the billboard would provide to local businesses and the community. 2020 Outdoor, through counsel, emphasized that the matters before the ZBA had been thoroughly addressed and that the arguments and evidence remained valid and uncontested.

36. During the meeting, the undersigned was questioned by one ZBA member regarding the structural integrity of the proposed billboard, specifically whether it would withstand high winds. Counsel responded that while he was not an engineer or builder, the sign, if approved, would be required to meet all City, State, and federal building standards, including City building department standards and engineering requirements. He further noted that to his knowledge, billboards rarely, if ever, fall in storms, particularly in southeastern Michigan, due to their stringent engineering standards. Further, counsel correctly pointed out that such technical issues fall within the purview of the building department, not the ZBA.

37. Despite this clear explanation, the ZBA failed to acknowledge that the engineering and construction standards for billboards are outside its scope of authority. Instead, they allowed unfounded fears regarding the billboard's safety to influence their decision-making. This reliance on issues beyond the ZBA's

jurisdiction, without substantial evidence to suggest the billboard posed an actual threat, demonstrates the subjective and arbitrary nature of the denial.

38. During the public comment portion of the meeting, a member of the public criticized 2020 Outdoor's counsel for not providing assurance that the billboard could withstand high winds. However, counsel was not given an opportunity to rebut these mischaracterizations. He had already clarified that the City's building department would set engineering standards, and it was beyond his qualifications to provide technical assurances, and beyond the ZBA's purview, in any event. The ZBA's failure to allow counsel to address this misinformation further underscores the arbitrary process and lack of fair consideration afforded to 2020 Outdoor.

39. Another member of the public made personal insults directed at counsel and 2020 Outdoor. This attack was not based on any objective standards or relevant criteria regarding the variance request but appeared to stem from a bias against the company. The ZBA, however, permitted these remarks to stand unchallenged, reflecting an inappropriate consideration of irrelevant and prejudicial input in its decision-making process.

40. Additionally, a third member of the public read lengthy prepared remarks arguing that billboards cause distracted-driving accidents. 2020 Outdoors's counsel was not afforded the opportunity to refute this argument despite having in his possession a Federal Department of Transportation (DOT) study that demonstrated

electronic billboards do not impact driver safety. The resident-speaker's arguments were based on statistics related to texting-and-driving incidents, not billboards, and therefore were not applicable to the case at hand. The ZBA's reliance on these erroneous arguments without giving 2020 Outdoor's counsel a chance to rebut demonstrates a clear bias and lack of objective analysis, further proving the arbitrary and capricious nature of their decision.

41. By allowing inaccurate and irrelevant public comments to influence its decision, the ZBA failed to base its denial on "competent, material, and substantial evidence" as required by law. The meeting's proceedings show that the ZBA gave undue weight to public sentiment and personal biases rather than objectively evaluating the merits of 2020 Outdoor's application and the evidence supporting the proposed billboard's compliance with the community's zoning goals.

42. The arbitrary and capricious denial by the ZBA on July 23, 2024, was a continuation of its previous pattern of denying 2020 Outdoor's variance requests without a legitimate basis. The decision ignored the documented benefits of the billboard, the engineering standards ensuring its safety, and 2020 Outdoor's compliance with the zoning ordinance's intent to promote economic development.

43. The City's repeated denial of 2020 Outdoor's variances, especially during the July 23, 2024, meeting, was not based on any objective criteria within the Zoning Ordinance. Instead, it was motivated by subjective judgments, fears, and

unsubstantiated public concerns. This conduct, influenced by misinformation, irrelevant concerns, and a refusal to consider the expert evidence provided by 2020 Outdoor, demonstrates an abuse of discretion and a violation of 2020 Outdoor's right to use its property interest for a lawful and economically beneficial purpose.

44. The ZBA feigned analysis under Section 28.13 of the Sterling Heights Zoning Ordinance, but its decision-making was ultimately arbitrary and capricious, representing a clear abuse of discretion.

45. Section 28.13(A) explicitly acknowledges the importance of signs for communication and their impact on economic values, public health, safety, and welfare. Despite 2020 Outdoor's compliance with the stated intent to create an attractive business climate, the ZBA disregarded this intent and instead focused on subjective factors not supported by substantial evidence.

46. The ZBA's decision ignored the findings outlined in Section 28.13(A), including how signs affect the visual quality of the community and promote economic viability. The denial failed to account for 2020 Outdoor's efforts to address visual and safety concerns, as required by the Ordinance.

47. The July 23, 2024, meeting illustrates the ZBA's arbitrary refusal to apply the ordinance's stated purpose of promoting an attractive and harmonious environment (Section 28.13(A)(7)(a)) and enhancing the City's economic viability (Section 28.13(A)(7)(d)).

48. Section 28.13(B) expresses the intent to regulate signage to maintain high aesthetic quality and an appealing economic climate. Despite this, the ZBA's denial contradicted the ordinance's intent to blend various land uses harmoniously.

49. Section 28.13(D) defines different sign types, including electronic message boards and freestanding signs. 2020 Outdoor's proposed billboard was designed to fit within these definitions, yet the ZBA arbitrarily dismissed its compliance with these specifications.

50. Section 28.13(E) sets general conditions for all signs, such as location restrictions and maintenance standards. 2020 Outdoor's proposal included adherence to these standards, which the ZBA ignored in its decision.

51. Under Section 28.13(G), specific types of signs, such as festoon signs, are prohibited. However, billboards that meet the criteria outlined in the ordinance are not prohibited outright, and 2020 Outdoor's proposed sign complied with these criteria, making the ZBA's denial unsupported by the ordinance's text.

52. Section 28.13(H) addresses illumination regulations, including electronic message boards. 2020 Outdoor proposed an electronic message board adhering to these guidelines ensuring that illumination would not interfere with driver visibility or safety. The ZBA's denial based on supposed safety concerns lacked a factual basis and contradicted the ordinance's own provisions.

53. The ordinance acknowledges, in Section 28.13(B)(h), the City's

attractiveness as a place for economic development and growth. The ZBA's denial ran counter to this objective, ignoring the economic benefits that 2020 Outdoor's sign would provide to the local businesses.

54. Section 28.13(C) limits the number of signs allowed on a lot as reasonable to avoid negative impacts. Despite this, the ZBA claimed 2020 Outdoor's sign would add to visual distraction without substantial evidence, ignoring the ordinance's provisions allowing signs under controlled circumstances.

55. Section 28.13(E)(8) states that signs on properties with outstanding code violations will not be processed unless a compliance agreement is in place. No such violations existed for 2020 Outdoor's property interest, rendering the ZBA's refusal to process the application without legal justification.

56. Section 28.13(H)(6) outlines the conditions for electronic message boards, including a prohibition on flashing messages and regulations on intensity levels. 2020 Outdoor's sign met these criteria, yet the ZBA disregarded this compliance, arbitrarily labeling the sign as a distraction to motorists.

57. The Sign Ordinance's prohibition of off-premises signs under certain circumstances (Section 28.13(K)(B)(5)) was cited by the ZBA to justify its denial. However, this restriction applies to billboards that do not meet the ordinance's exceptions, which 2020 Outdoor's proposal did.

58. The appeal procedure in Section 28.13 allows for variances when strict

application of the ordinance results in practical hardship. The ZBA refused to consider the unique characteristics of 2020 Outdoor's property interest that justified the variance, demonstrating an arbitrary application of the ordinance's standards.

59. The Sign Ordinance contains no "savings" or "severance" clause.

60. 2020 Outdoor has entered into a perpetual easement agreement and expended tremendous resources of both a monetary and temporal nature in preparation for construction of the proposed billboard.

61. As a result of the City's arbitrary and capricious denial, 2020 Outdoor has been unjustly deprived of the ability to use its property interest, causing significant economic harm and necessitating this action for declaratory and injunctive relief.

## COUNT I
## REGULATORY TAKING IN VIOLATION
## OF THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION

62. 2020 Outdoor hereby incorporates all preceding paragraphs herein.

63. The City has seized or otherwise taken without just compensation 2020 Outdoor's real property interest by way of regulations imposed upon 2020 Outdoor.

64. The City ordinances and regulations which concern the Property functionally prohibit the construction of anything on 2020 Outdoor's property interest, leaving 2020 Outdoor, which holds only a perpetual easement on the parcel, with the construction of an off-premises sign as the sole viable financial use.

65. The Sign Ordinance effectively prohibits all financially viable signs due to

its restrictive dimensional requirements, including height, area limitations, and the complete prohibition of new off-premises billboards within the city, except in narrowly defined circumstances.

66. Thus, 2020 Outdoor's property interest is completely unusable for any economically beneficial purpose.

67. This constitutes a regulatory taking contrary to the Fifth Amendment to the U.S. Constitution.

68. The regulations of the City's Sign Ordinance have substantially and materially jeopardized 2020 Outdoor's business, and prohibited the use of 2020 Outdoor's property interest, causing economic damages.

## COUNT II
## VAGUENESS IN VIOLATION OF THE
## FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION

69. 2020 Outdoor hereby incorporates all preceding paragraphs herein.

70. The Fourteenth Amendment's Due Process Claims prohibits governmental entities from enforcing statutes, ordinances, and regulations that are unconstitutionally vague.

71. Pursuant to due-process concerns, laws must be drafted in such a fashion that a person of ordinary intelligence may understand what is required and what is prohibited under said ordinance.

72. Specificity of a sufficient degree is required in any state-governmental law in

order to provide for proper application of said law.

73. Jurisprudence under the Due Process Clause has made it clear that state governments may not enforce laws with which compliance is impossible.

74. Sections 28.13(A)(4) and (A)(7)(b) of the City's Sign Ordinance find (and the City ZBA denied 2020 Outdoor's variance application on the basis of) "aesthetics" and "visual quality" as important considerations.

75.   The Sign Ordinance vaguely references the need to promote "the general health, safety, and welfare," as well as the "visual quality" of the community, without providing any distinct criteria for what constitutes an unacceptable impact on these considerations. The lack of clear standards leaves applicants guessing about compliance, granting the ZBA excessive discretion in interpreting and applying the ordinance.

76. Specifically, the ordinance discusses avoiding "saturation and confusion in the field of vision," improving "aesthetics," and maintaining "an attractive and harmonious environment" (Section 28.13(A)(7)(a)–(b)). However, it provides no framework or objective guidelines to determine what level of signage constitutes such clutter or disharmony. The ordinance's failure to define or clarify these terms results in arbitrary decision-making.

77.   Similarly, Section 28.13(A)(7)(c) allows for denying variance requests based on vague "public safety" concerns. However, the ordinance provides no

parameters or details for defining a significant risk to public "health, safety, and welfare," leaving the interpretation of these criteria entirely up to the whims of individual ZBA members, without any concrete guidelines.

78. Sections 28.13(A)(7)(a)–(c) of the City's Sign Ordinance are therefore unconstitutionally vague both facially and as applied to 2020 Outdoor. The lack of clear standards permits arbitrary enforcement, violating the due process rights of 2020 Outdoor under the Fourteenth Amendment.

79. 2020 Outdoor has no remedy at law, its harm is ongoing, and there is no remedy except through injunctive relief.

## COUNT III
## VIOLATIONS OF THE FIRST AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION (PRIOR RESTRAINT)

80. 2020 Outdoor incorporates all preceding paragraphs herein.

81. It is indisputable that communications and advertisements contained on billboards are protect speech under the U.S. Constitution's First Amendment.

82. The City's Sign Ordinance was passed under color of law.

83. It is well-settled law that governmental entities may not require approval through a licensing or permitting process with respect to First Amendment protected speech unless and until there are certain objective and definitive parameters of a functional nature in place that guide governmental entities' decision-making processes.

84. The City's Sign Ordinance fails to provide sufficiently objective, narrow, and definitive standards by which the ZBA can base their decision making.

85. The City ZBA made conclusions as to "safety" without considering whether there was a significant risk to safety, and contrary to the federal DOT study that would have been proffered by 2020 Outdoor proving that electronic billboards do not impact driver's safety but for the ZBA preventing 2020 Outdoor's counsel from producing such a study.

86. There are no definitions or any additional criteria—or any framework whatsoever—found in the City Sign Ordinance that could or would guide the ZBA in their decision-making process as to what constitutes significant risk to "safety."

87. Moreover, contrary to the ZBA's argument, Section 28.13(H)(6)(a) of the City's Sign Ordinance explicitly acknowledges the inherent safety and "merit in allowing new technologies to easily update signage messages, to minimize the proliferation of signage by allowing multiple messages on a single sign"—precisely what 2020 Outdoor seeks to accomplish.

88. There are no definitions or any additional criteria—or any framework whatsoever—found in the City Sign Ordinance that could or would guide the ZBA in their decision-making process as to what constitutes "aesthetic harm."

89. Furthermore, the City permitted an electronic message billboard on

Metropolitan Parkway for the Michigan Lottery Amphitheater (Freedom Hill), which also displays additional advertising messages. Notably, this existing billboard is situated on the same exact road on which 2020 Outdoor is proposing to construct its billboard. Although this sign exceeds the City's Sign Ordinance restrictions, it was granted an exception, underscoring the City's arbitrary decision-making and unlawful discretion in allowing some signs while prohibiting others.

 

90. The City has, and will presumably continue, to grant many and myriad variances without any sufficiently objective parameters being applied to their determinations under the Sign Ordinance.

91. The City has denied 2020 Outdoor's variance requests in violation of 2020 Outdoor's right to free speech under the First Amendment to the U.S. Constitution. 2020 Outdoor has been damaged as a result, and injunctive and declaratory relief are

also appropriate herein.

## COUNT IV
## VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION (CONTENT-BASED RESTRICTIONS)

92. 2020 Outdoor hereby incorporates all preceding paragraphs herein.

93. Content-based regulations relative to speech are subject to a strict scrutiny standard and governmental entities must show a compelling interest for such regulations and restrictions.

94. As set forth above, the City's Sign Ordinance contains a litany of content-based regulations, including definitions and regulations concerning "political signs," various types of real estate signs, and temporary signs, among others.

95. The Sign Ordinance regulations allow certain types of signs as set forth in Section 28.13(K), Sign Table Reference (F), (L), among other subsections, to be erected without permits. Thus, the City allows some types of speech without first requiring permits, while prohibiting other types of speech (such as 2020 Outdoor's) unless and until permits are granted in the discretion of the City via its vague Sign Ordinance. *Reed, supra*, 576 U.S. 155 (2015).

96. The City has no compelling interest through which it can impose such content-based restrictions.

97. Thus, such content-based restrictions are violative of the U.S. Constitution.

98. The City Sign Ordinance lacks a "savings" or severance" clause, and, as a

result, the entire Sign Ordinance is unconstitutional facially and as applied to 2020 Outdoor per the First and Fourteenth Amendments to the U.S. Constitution.

99. 2020 Outdoor has and will continue to suffer damages due to its inability to use the property interest for any meaningful, financial purpose.

100.    2020 Outdoor has been damaged as a result, and injunctive and declaratory relief are also appropriate herein.

**COUNT V**
**VIOLATION OF THE FOURTEENTH AMENDMENT TO THE U.S.**
**CONSTITUTION (EQUAL PROTECTION)**

101.    2020 Outdoor hereby incorporates all preceding paragraphs herein.

102.    Section 1 of the Fourteenth Amendment states, in relevant part, that "[n]o state shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws."

103.    The City and the City ZBA have violated the equal protection rights of 2020 Outdoor as protected under the Fourteenth Amendment to the U.S. Constitution by treating other business-advertising entities differently, and the City has done so without any objectively valid reason or basis by claiming that 2020 Outdoor's billboard would constitute "aesthetic harm" and pose a significant safety risk even though the City has approved and continues to approve thousands of other roadside signs. This is true because the City allowed the construction of the aforementioned Freedom Hill billboard on Metropolitan Parkway but is denying 2020 Outdoor's

proposed billboard.

104.     Such actions constitute discriminatory behavior, as the City can and has applied the Sign Ordinance criteria concerning safety and aesthetic harm inconsistently to others similarly situated to 2020 Outdoor, such as in the instance of the Freedom Hill billboard.

105.     There exists no compelling, reasonable, or rational basis or governmental interest or objective that would permit treating 2020 Outdoor differently than other sign owners and applicants in the City.

106.     2020 Outdoor has been damaged as a result, and injunctive and declaratory relief are also appropriate herein.

## COUNT VI
## VIOLATION OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION (DUE PROCESS)

107.     Plaintiff herby incorporates all preceding paragraphs herein.

108.     The Fourteenth Amendment's Due Process clause protects against the arbitrary and capricious application of laws.

109.     As provided above, the City's Sign Ordinance lacks sufficient definitions and parameters for application of the criteria relied upon by the ZBA in denying 2020 Outdoor.

110.     The Sign Ordinance lacks definitions or any supporting framework for "aesthetic harm" and "public health, safety, and welfare," among many others.

111.     The City Sign Ordinance leaves the decision as to what constitutes "aesthetic harm" or "public health, safety, and welfare" to the arbitrary and capricious personal passions and whims of ZBA members. This results in the approval of some billboards, such as the Freedom Hill billboard, while denying 2020 Outdoor's proposed billboard.

112.     The application of these undefined and unparameterized regulations in the Sign Ordinance by the ZBA members has led to a wholly arbitrary determination against 2020 Outdoor.

113.     As a result of the above, 2020 Outdoor has been damaged, and injunctive and declaratory relief are also appropriate here.

## COUNT VII
## REGULATORY TAKING IN VIOLATION OF THE MICHIGAN CONSTITUTION

114.     2020 Outdoor hereby incorporates all preceding paragraphs herein.

115.     The City has seized or otherwise taken without just compensation 2020 Outdoor's members' real property interest by way of regulations imposed upon 2020 Outdoor.

116.      The City ordinances and regulations which concern 2020 Outdoor's property interest functionally prohibit the construction of all buildings on 2020 Outdoor's property interest, leaving off-premises signs, such as 2020 Outdoor's proposed billboard, as the only possible use for the property interest.

117.    The Sign Ordinance effectively prohibits 2020 Outdoor's potential to erect financially viable signs by imposing restrictive dimensional requirements, including maximum height and area limitations under the guise of vague considerations which contradict stated purposes of the Sign Ordinance itself. . These prohibitions and other restrictive provisions of the ordinance, leave no feasible opportunity for the construction of off-premises signs, making any financially viable use of such signs virtually impossible.

118.    Thus, 2020 Outdoor's property interest is completely unusable for any economically beneficial purpose.

119.    This constitutes a regulatory taking in violation of Article X, Section 2 of Michigan's 1963 Constitution.

## COUNT VIII
## VIOLATION OF ART. 1, § 5 OF THE MICHIGAN CONSTITUTION

120.    2020 Outdoor hereby incorporates all preceding paragraphs herein.

121.    Communications and advertisements contained on billboards are protected speech under Article 1, Section 5 of the Michigan Constitution.

122.    The City may not require approval through a licensing or permitting process with respect to protected speech unless and until there are certain objective and definitive parameters of a functional nature in place that guide governmental entities' decision-making processes.

123.     The City's Sign Ordinance fails to provide sufficiently objective, narrow, and definitive standards by which the ZBA can base their decision making.

124.     The City ZBA made conclusions as to "safety" without considering whether there was a significant (undefined) risk to safety, and contrary to the federal DOT study (which 2020 Outdoor would have produced but for the ZBA preventing same) proving that electronic billboards do not impact driver safety.

125.     There are no definitions or any additional criteria—or any framework whatsoever—found in the City Sign Ordinance that could or would guide the ZBA in their decision-making process as to what constitutes significant risk to "safety."

126.     There are no definitions or any additional criteria—or any framework whatsoever—found in the City Sign Ordinance that could or would guide the ZBA in their decision-making process as to what constitutes "aesthetic harm."

127.      The City has, and will presumably continue, to grant many and myriad variances without any objective parameters being applied to their determinations under the Sign Ordinance with respect to these aforementioned criteria and other undefined terms and criteria.

128.     The City has denied 2020 Outdoor's variance requests in violation of 2020 Outdoor's right to free speech under the Michigan Constitution.

129.      2020 Outdoor has been damaged as a result, and injunctive and declaratory relief are also appropriate herein.

## COUNT IX
## EXCLUSIONARY ZONING

130.    2020 Outdoor hereby incorporates all preceding paragraphs herein.

131.    Off-premises Billboard advertising is recognized as a legitimate land use under the laws of the State of Michigan.

132.    MCL 125.3207 provides as follows: "A zoning ordinance or zoning decision shall not have the effect of totally prohibiting the establishment of a land use within a local unit of government in the presence of a demonstrated need for that land use within either that local unit of government or the surrounding area within the state, unless the location within the government does not exist where the use may be appropriately located or the use is unlawful."

133.    An ordinance which completely prohibits a use recognized by Michigan law (and/or its constitution) is unlawfully discriminatory and is a denial of equal protection; thus, such an ordinance is invalid unless the prohibition related directly to the health, safety, or welfare of the community.

134.    Thus, the City cannot have in place a zoning ordinance that prohibits the use of land recognized as legitimate by the laws of the State of Michigan.

135.    Yet, the City's ordinance functional (and expressly) prohibits the construction of billboards in the City, which amounts to a total exclusion of billboards despite same being recognized as a legitimate land use.

136.    2020 Outdoor's proposed location is an appropriate and ideal location

for such a sign.

137.     The City's exclusion and prohibition of 2020 Outdoor's sign per the City's Sign Ordinance amounts to exclusionary zoning in violation of Michigan law, including MCL 125.3207.

WHEREFORE, 2020 Outdoor respectfully requests that this Honorable Court adjudge and declare that the City of Sterling Height's Sign Ordinance constitutes exclusionary zoning with respect to 2020 Outdoor's property, and is unconstitutional and/or are violative of the First, Fifth, and Fourteenth Amendment to the U.S. Constitution and Article 1 and Article 10 of the Michigan Constitution and/or that the variance denials were arbitrary, capricious, and lacked authority under the law, for the reasons stated, *supra*. 2020 Outdoor further respectfully requests that the Court order the City to approve and permit 2020 Outdoor to construct the billboard as proposed by 2020 Outdoor, along with an award of damages, costs, interest, attorney fees, and any other relief that this Honorable Court deems just and equitable.

Respectfully submitted,

BOEDEKER LAW, P.C.


By: */s/Shaun A. Kelley*
SHAUN A. KELLEY (P83704)
Attorneys for Plaintiff
48 Market Street, Suite 2B
Mt. Clemens, MI  48043
(586) 871-7684

Dated:  October 10, 2024